IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


IN RE CATERPILLAR INC.　　　　　)　　　C.A. No. 12-CV-1076-LPS
DERIVATIVE LITIGATION　　　　　 )　　　(Consolidated Action)



**OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS THE VERIFIED CONSOLIDATED COMPLAINT**



OF COUNSEL:

Walter C. Carlson (*pro hac vice*)
James W. Ducayet (*pro hac vice*)
Patrick J. Wackerly (*pro hac vice*)
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Dated:  January 7, 2013

Gregory P. Williams (#2168)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
williams@rlf.com
rawnsley@rlf.com

*Attorneys for Defendants David L. Calhoun,
Daniel M. Dickinson, Eugene V. Fife, Juan
Gallardo, David R. Goode, Jesse J. Greene,
Jr., Jon M. Huntsman, Jr., Stuart L. Levenick,
Peter A. Magowan, Dennis A. Muilenburg,
Douglas R. Oberhelman, William A. Osborn,
James W. Owens, Charles D. Powell, Edward
B. Rust, Jr., Susan C. Schwab, Joshua I. Smith,
Gerard Vittecoq, Miles D. White, Steven H.
Wunning, and Caterpillar Inc.*

## TABLE OF CONTENTS

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................1

SUMMARY OF THE ARGUMENT ...............................................................................2

STATEMENT OF FACTS ..............................................................................................4

    A.    The Defendants ..................................................................................4

    B.    The Incentive Plans............................................................................4

    C.    Section 162(m)...................................................................................6

    D.    Caterpillar's Shareholders Approve and Reapprove The Performance Criteria in Both Plans.................................................................................7

        1.    2006 Approval And 2010 Reapproval Of The LTIP ...................7

        2.    2011 Reapproval Of The ESTIP .............................................8

    E.    Defendants' Challenged Statements Relating To The Section 162(m) Provisions..........................................................................................9

ARGUMENT ..............................................................................................................10

I.    THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO PLEAD PARTICULARIZED FACTS SHOWING THAT DEMAND IS EXCUSED.................10

    A.    Plaintiffs Have Not Pleaded Particularized Facts Establishing A Reasonable Doubt That A Majority Of The Board Is Not Disinterested And Independent. ....12

        1.    The Independent Directors Have No Interest In The ESTIP. ....................13

        2.    The Independent Directors Have No Interest In The Challenged LTIP Transactions.................................................................13

    B.    The Plaintiffs Have Not Pleaded Facts Showing A Reasonable Doubt That The Challenged Proxies Were the Result Of A Valid Exercise of Business Judgment. ..........................................................................................17

II.    THE COMPLAINT MUST BE DISMISSED FOR PLAINTIFFS' FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6). .........................................................20

    A.    The Complaint Fails To State A Claim For Breach Of Fiduciary Duty. ..............21

        1.    The Challenged Proxy Statement Disclosures Reflect Only Defendants' Opinions Regarding The Plans, Which Are Not Alleged To Be False. ..........................................................................21

2.      The ESTIP And LTIP Fully Comply With The Requirements
        For Tax Deductibility Under Section 162(m)...........................................26

B.      Plaintiffs Cannot Meet The High Standard For Pleading Waste. .........................30

C.      Plaintiffs Cannot Plead Unjust Enrichment. ........................................................32

CONCLUSION ....................................................................................................................32

RLF1 7852089v.1

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abrams v. Wainscott,*
No. 1-297-RGA, 2012 WL 3614638 (D. Del. Aug. 21, 2012) ...................................11, 12, 17

*Aronson v. Lewis,*
473 A.2d 805 (Del. 1984) ..................................................................................10, 11, 12, 13

*Ash v. LFE Corp.,*
525 F.2d 215 (3d Cir. 1975).........................................................................................26

*Bader v. Blankfein,*
No. 07-CV-1130, 2008 WL 5274442 (E.D.N.Y. Dec. 19, 2008) ...................................17, 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007).................................................................................................20, 30

*Black v. Cincinnati Fin. Corp.,*
No. 1:11-cv-210, 2011 WL 1640962 (S.D. Ohio May 2, 2011).....................................17, 27

*Brehm v. Eisner,*
746 A.2d 244 (Del. 2000) ...........................................................................................11, 31

*Cinerama, Inc. v. Technicolor, Inc.,*
663 A.2d 1134 (Del. Ch. 1994)........................................................................................13

*Criden v. Steinberg,*
No. 17082, 2000 WL 354390 (Del. Ch. Mar. 23, 2000).........................................................31

*Dow Chem. Co. v. Exxon Corp.,*
30 F. Supp. 2d 673 (D. Del. 1998)......................................................................................20

*Eisenberg v. Gagnon,*
766 F.2d 770 (3d Cir. 1985).............................................................................................24

*Freedman v. Adams,*
No. 4199-VCN, 2012 WL 1099893 (Del. Ch. Mar. 30, 2012)...............................................17

*Freedman v. Adams,*
No. 4199-VCN, 2012 WL 1345638 (Del. Ch. Mar. 30, 2012)...............................................24

*Gasner v. Board of Supervisors of the County of Dinwiddie, Va.,*
103 F.3d 351 (4th Cir. 1996) ..........................................................................................20

*Grimes v. Donald,*
673 A.2d 1207 (Del. 1996) ..............................................................................................20

iii

*Halpert Enters., Inc. v. Harrison,*
    No. 06 Civ. 2331, 2007 WL 486561 (S.D.N.Y. Feb. 14, 2007) ............................................18

*Highland Legacy Ltd. v. Singer,*
    C.A. No 1566-N, 2006 WL 741939 (Del. Ch. Mar. 7, 2006) ................................................19

*Hoch v. Alexander,*
    No. 11-217, 2011 WL 2633722 (D. Del. July 1, 2011) ........................................................17

*In re CNET Networks, Inc. S'holder Deriv. Litig.,*
    483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................................................18

*In re Computer Scis. Corp. Deriv. Litig.,*
    No. CV 06-05288, 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ........................................18

*In re eBay, Inc. Deriv. Litig.,*
    No. 10-470-LPS, 2011 WL 3880924 (D. Del. Sept. 2, 2011) ..............................................20

*In re MONY Grp., Inc. S'holder Litig.,*
    853 A.2d 661 (Del. Ch. 2004)....................................................................................24, 26

*In re NAHC, Inc. Sec. Litig.,*
    306 F.3d 1314 (3d Cir. 2002)..............................................................................................5

*In re Reliance Sec. Litig.,*
    135 F. Supp. 2d 480 (D. Del. 2001) ..............................................................................22, 23

*Khanna v. McMinn,*
    No. Civ. A. 20545-NC, 2006 WL 1388744 (Del. Ch. May 9, 2006) ..............................12, 26

*Lewis v. Vogelstein,*
    699 A.2d 327 (Del.Ch. 1997).............................................................................................31

*Loudon v. Archer-Daniels-Midland, Co.,*
    C.A. No. 14638, 1996 WL 74730 (Del. Ch. Feb. 20, 1996)................................................26

*Oran v. Stafford,*
    226 F.3d 275 (3d Cir. 2000)................................................................................................5

*Pfeffer v. Redstone,*
    965 A.2d 676 (Del. 2009) ................................................................................................22

*Rales v. Blasband,*
    634 A. 2d 927 (Del. 1993) ...............................................................................................11

*Resnick v. Woertz,*
    774 F. Supp. 2d 614 (D. Del. 2011) ..................................................................................17

*Risberg v. McArdle*,
    529 F. Supp. 2d 213 (D. Mass. 2008) ...................................................................18

*Seinfeld v. O'Connor*,
    774 F. Supp. 2d 660 (D. Del. 2011)............................................................. *passim*

*Seinfeld v. Slager*,
    No. 6462-VCG, 2012 WL 2501105 (Del. Ch. June 29, 2012) .............................12, 15, 16, 17

*Spiegel v. Buntrock*,
    571 A.2d 767 (Del. 1990) .............................................................................10, 11

*St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*,
    No. 06 Civ. 688, 2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006) ...............................18

*Steiner v. Meyerson*,
    No. 13139, 1995 WL 441999 (Del. Ch. July 19, 1995).........................................31

*Vides v. Amelio*,
    265 F. Supp. 2d 273 (S.D.N.Y. 2003)................................................................18

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991)......................................................................................22

*White v. Panic*,
    783 A.2d 543 (Del. 2001) ................................................................................10

*Zupnick v. Goizueta*,
    698 A.2d 384 (Del. Ch. 1997)..........................................................................19

**STATUTES & RULES**

26 U.S.C. § 162(m) .............................................................................................6, 14

Fed. R. Civ. P. 23.1 ...............................................................................................11

**OTHER AUTHORITIES**

17 C.F.R. § 229.402................................................................................................30

26 C.F.R. § 1.162-27(e) ................................................................................. *passim*

13B Charles A. Wright et al., Federal Practice and Procedure § 3532.2 (3d ed.)............................20

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This is a shareholder derivative action brought by the City of Lansing Police and Fire Retirement System and Asbestos Workers Philadelphia Pension Fund ("Plaintiffs"), purportedly on behalf of Caterpillar Inc. ("Caterpillar" or the "Company").  Plaintiffs do not assert any direct claims of their own as shareholders or on behalf of other Caterpillar shareholders; instead, they seek to step into the shoes of the Company and assert claims the Company purportedly has against members of its Board of Directors and certain executive officers (collectively, the "Defendants").

The gravamen of Plaintiffs' Verified Consolidated Complaint (the "Complaint") is that Defendants allegedly failed to disclose to Caterpillar's shareholders that two of the Company's incentive compensation plans are purportedly not eligible for tax deductions under Section 162(m) of the Internal Revenue Code, 26 U.S.C. § 162(m).  Section 162(m) limits the deductibility of compensation awarded to certain officers above $1 million, other than qualified performance-based compensation.  Plaintiffs allege that two of the Company's incentive compensation plans contain performance criteria that were too vague to comply with pertinent Treasury regulations under Section 162(m).  The Complaint does not allege that the IRS has disallowed any deductions for this reason, or even that the IRS has raised any questions in this regard.  Nevertheless, Plaintiffs allege that the Defendants made false representations when they advised Caterpillar's shareholders that they "intended" or "expected" performance-based compensation to qualify for tax deductions under Section 162(m).

The Complaint should be dismissed for two separate and independent reasons.  First, although seeking to bring this case in a derivative capacity, the Plaintiffs neither made a pre-suit demand on the Board of Directors nor pleaded particularized facts sufficient to show that demand is excused, as is required under both Delaware and Federal law.  An overwhelming

majority of the Board is both disinterested and independent, and there are no particularized

factual allegations to suggest that the challenged conduct is not protected by the business

judgment rule.

Second, Plaintiffs have failed to state any claims against the Defendants upon which

relief can be granted.  Plaintiffs' disclosure claims mischaracterize what the Company's proxy

statements actually say.  The Company's actual statements – that the Company "expected" and

"intended" the Plans to comply with Section 162(m) – are indisputably true.  Plaintiffs have

alleged no facts to suggest that this was not the legitimate expectation and intent of Defendants.

Moreover, Plaintiffs have not alleged facts to establish that the Plans do not comply with Section

162(m) or that any performance-based compensation awards under the Plans constituted waste or

unjust enrichment.

For all of these reasons, the Complaint should be dismissed.

## SUMMARY OF THE ARGUMENT

1. As in any derivative action, a threshold question is whether Plaintiffs should be

allowed to usurp the obligations of Caterpillar's duly-elected Board of Directors to decide what

is in the Company's best interest, including, in this instance, the decision whether to bring a

lawsuit on behalf of the Company arising out of the challenged disclosures and compensation

awards.  Plaintiffs did not make a demand on the Company's Board of Directors, claiming that

such a demand would be futile.  In such situations, the Plaintiffs bear a heavy burden at the

pleading stage under Fed. R. Civ. P. 23.1 to allege particularized facts showing that the normal

corporate decision-making process should be disregarded and the suit allowed to proceed.

Plaintiffs do not meet this burden in any respect.

a. Plaintiffs' claim is that the Board is eligible to participate in one of the two

challenged incentive plans, and, as such, cannot adequately exercise its business

judgment to consider a pre-suit demand.  However, the tax deductions at issue inure to the benefit of the Company, not the recipient of the incentive award.  In addition, an overwhelming majority of the Board (i) do not receive performance-based compensation; (ii) are not named officers subject to the regulation; and (iii) have not earned and do not earn more than $1 million a year from the Company.  For each of these reasons, no portion of their compensation is subject to the limitation on deductibility imposed by Section 162(m).  As such, these Directors retain the right to consider a pre-suit demand, and demand is not excused.

        b.      Plaintiffs also attempt to plead that demand is excused because claims involving alleged misrepresentations in proxy statements are not subject to the demand requirement.  This argument has been repeatedly rejected by courts in this District and elsewhere.

        c.      Plaintiffs' claim of waste as an exception to the demand futility requirement is similarly lacking in merit.  Plaintiffs have not pleaded facts sufficient to meet the extremely high standard required to show waste and excuse demand.

    2.     In addition to failing to adequately plead demand futility, the Complaint fails under Rule 12(b)(6) to state actionable claims against any of the Defendants.

        a.      Plaintiffs challenge as inaccurate statements made in two Proxy Statements that the Company believed the incentive plans were structured in accordance with Section 162(m).  Not only do the Plans in fact comply with the requirements of Section 162(m), but Plaintiffs fail to allege any plausible facts showing that the Defendants believed otherwise or that their beliefs were not reasonable.

b.    Plaintiffs have failed to plead a claim for waste, because they have not and cannot allege plausible facts showing that the compensation paid under the challenged Plans was unreasonable.

c.    Plaintiffs' claim for unjust enrichment must also be dismissed.  In addition to failing to plead facts showing that any challenged compensation qualifies as "unjust," this claim wrongly presumes that the compensation is not tax deductible and that the tax deduction inures to the benefit of the recipient of the compensation, not the Company.

## STATEMENT OF FACTS

### A.    The Defendants

Caterpillar is a Delaware corporation with its principal place of business in Peoria, Illinois.  (Compl. ¶ 12.)  Caterpillar manufactures construction equipment and other heavy machinery.  (*Id.*)  Caterpillar's Board of Directors is currently composed of sixteen directors: fifteen independent, non-employee directors, Defendants Calhoun, Dickinson, Fife, Gallardo, Goode, Greene, Huntsman, Magowan, Muilenburg, Osborn, Powell, Rust, Schwab, Smith, and White (the "Independent Directors") and Defendant Oberhelman, who also serves as Caterpillar's CEO (together with the Independent Directors, the "Director Defendants").  (*Id.* ¶¶ 13-29.)  The remaining Defendants in this action are three officers of Caterpillar, Defendants Levenick, Vittecoq, and Wunning, and Defendant Owens, Caterpillar's former CEO and Chairman of the Board, who retired from his positions with the Company in 2010.

### B.    The Incentive Plans

This case concerns two incentive compensation programs in place at Caterpillar:  the Long-Term Incentive Program, or "LTIP," and the Executive Short-Term Incentive Program, or "ESTIP" (collectively, the "Plans").  The LTIP is a compensation plan administered by the

4

Compensation Committee (the "Committee") of the Board of Directors.  The LTIP is an extremely broad plan, under which the Committee may award cash or equity incentives to any employee of Caterpillar or any of its subsidiaries.  (Ex. A, 2010 Proxy Statement, Form DEF 14A filed Apr. 19, 2010, at 21-24.)[1]  Through these awards, the Committee seeks to provide Caterpillar's employees with "a stake in the growth and prosperity of the Company, aligning their interests with those of stockholders and encouraging the continuance of their services with the Company and its subsidiaries." (*Id.* at 21.)

Although the Company's directors are also technically eligible to participate in the LTIP, none of the Independent Directors has received any performance-based incentive awards under the LTIP.  Instead, starting in 2009, all non-employee directors received a fixed cash retainer for their board service.  (*Id.* at 67.)  In February 2011, the Board modified non-employee director compensation to include a mix of cash and equity, which was set at a total fixed value of $250,000 per year.  (Ex. B, 2011 Proxy Statement, Form DEF 14A filed Apr. 15, 2011, at 61-62.).  Thereafter, non-employee directors received compensation consistent with these new guidelines.  (*See* Ex. C, 2012 Proxy Statement, Form DEF 14A filed Apr. 23, 2012, at 53-54.)[2]

The ESTIP is an annual incentive plan that covers only the executive officers of the Company.  (Ex. B, 2011 Proxy Statement at 17-18.)  Therefore, unlike the LTIP, the Independent

---

[1] The 2010 Proxy Statement is cited in the Complaint but not attached as an exhibit thereto. Under these circumstances, the Court may consider the Proxy Statement, as well as other Proxy Statements and public documents filed with the SEC, on a motion to dismiss.  *In re NAHC, Inc. Sec. Litig.,* 306 F.3d 1314, 1331 (3d Cir. 2002) (court may take judicial notice of "documents relied upon in the Complaint" and "documents filed with the SEC, but not relied upon in the Complaint"); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) (court may "take judicial notice of properly-authenticated public disclosure documents filed with the SEC"); *Seinfeld v. O'Connor*, 774 F. Supp. 2d 660, 666 n.3 (D. Del. 2011) (Stark, J.) (proxy statement integral to Complaint may be considered on motion to dismiss).

[2] Certain directors receive a slightly larger retainer, which is also not performance based, to reflect their service on Board committees.  (Ex. B, 2011 Proxy Statement at 61.)

Directors are not eligible to participate in the ESTIP.  *Id.*  Under the ESTIP, the Committee

establishes annual performance goals that, if met, will result in cash awards to the CEO, Group

Presidents, and other executive officers designated by the Committee.  (*Id.* at 65.)

### C.     Section 162(m)

Both Plans contain specific provisions that were designed to comply with Section 162(m)

of the Internal Revenue Code.  *See* 26 U.S.C. § 162(m).  Section 162(m) limits public

corporations from deducting annual compensation over $1 million paid to certain "covered

employees."  The statute defines "covered employees" as the CEO and those employees required

to be reported to shareholders under the Securities and Exchange Act of 1934 for "being among

the 4 highest compensated officers for the taxable year (other than the chief executive officer)."

*Id.* § 162(m)(3).  However, Section 162(m) contains an exception that allows companies to

deduct compensation over $1 million to covered employees if certain criteria are met.

Specifically, Section 162(m)(4)(C) provides that compensation will not be subject to the

limitation on deductibility if it is performance-based, that is, paid "solely on account of the

attainment of one or more performance goals."  *Id.* § 162(m)(4)(C).  Further, such performance

goals must be "disclosed to shareholders and approved by a majority of the vote in a separate

shareholder vote before the payment of such remuneration."  *Id.* § 162(m)(4)(C)(ii).

Treasury regulations implementing Section 162(m) require that the performance goals for

a Section 162(m) plan be reapproved by shareholders at least every five years.  26 C.F.R.

§ 1.162–27(e)(4)(vi).  Further, the regulations require that, prior to the shareholder vote, the

company disclose "the employees eligible to receive compensation; a description of the business

criteria on which the performance goal is based; and either the maximum amount of

compensation that could be paid to any employee or the formula used to calculate the amount of

compensation to be paid to the employee if the performance goal is attained."  *Id.* § 1.162–

6

27(e)(4)(i).  The regulations make clear, however, that "[d]isclosure of the business criteria on which the performance goal is based need not include the specific targets that must be satisfied under the performance goal." *Id.* § 1.162–27(e)(4)(iii).

    **D.**    **Caterpillar's Shareholders Approve and Reapprove The Performance Criteria in Both Plans**

        **1.**    **2006 Approval And 2010 Reapproval Of The LTIP**

    Prior to the events at issue in this case, the LTIP's performance criteria were disclosed to Caterpillar's shareholders in the 2006 Proxy Statement and approved by shareholders at Caterpillar's 2006 annual meeting.  (*See* Ex. D, 2006 Proxy Statement, Form DEF 14A filed Apr. 17, 2006, at 31; Ex. E, Form 10-Q for the quarter ended June 30, 2006, filed August 2, 2006, at 69.)  In 2010, the Company sought a shareholder vote to amend certain provisions of the LTIP unrelated to the performance criteria, including increasing the amount of stock available for equity awards under the Plan.  (*See* Ex. A, 2010 Proxy Statement at 21.)  As part of that amendment process, the Company also sought shareholder reapproval of the Section 162(m) performance goals included in the LTIP, in keeping with the IRS regulations requiring reapproval no less then every five years.  (*See id.*) ("Approval of the amendments to the Plan will also constitute reapproval, for purposes of Section 162(m) of the Internal Revenue Code (Code), of the performance goals included in the Plan . . . .")

    As disclosed in the 2010 Proxy Statement, the LTIP includes a number of potential performance criteria for use by the Committee in setting performance goals for tax deductible compensation in accordance with Section 162(m):

> (i) revenue; (ii) primary or fully-diluted earnings per share; (iii) earnings before interest, taxes, depreciation, and/or amortization; (iv) pretax income; (v) cash flow from operations; (vi) total cash flow; (vii) return on equity; (viii) return on invested capital; (ix) return on assets; (x) net operating profits after taxes; (xi) economic value added; (xii) total stockholder return; (xiii) return on sales; or

7

> (xiv) any individual performance objective which is measured
> solely in terms of quantifiable targets related to the Company or
> the businesses of the Company; or any combination thereof.

(*Id.* at 24.)  Although the LTIP includes provisions designed to provide tax-deductible compensation under Section 162(m), the LTIP also includes a provision specifying that "the Compensation Committee may elect to provide compensation outside those requirements [for qualification as performance-based compensation for purposes of Section 162(m)] when necessary to achieve its compensation objectives."  (*Id.* at 56.)

At Caterpillar's 2010 Annual Meeting, the proposal to amend the LTIP and reapprove the Section 162(m) performance criteria was approved by shareholders, with more than 327.6 million votes in favor and 115.0 million votes against.  (Ex. F, Form 8-K filed June 11, 2010, at 3.)  The Complaint does not seek any specific relief regarding the 2010 vote regarding the LTIP.

## 2.      2011 Reapproval Of The ESTIP

The Company sought shareholder reapproval of the ESTIP's Section 162(m) performance criteria, which had also last been approved in 2006, during its 2011 Annual Meeting.  (Ex. B, 2011 Proxy Statement at 17.)  The ESTIP's Section 162(m) performance criteria are identical to those disclosed in 2010 for the LTIP, with the addition of two additional criteria, "realized 6 Sigma benefits" and "operating profit after capital charge."  (*Id*. at 18.)  Like the LTIP, the ESTIP provides that "the Compensation Committee may elect to provide compensation outside those requirements [for qualification as performance-based compensation for purposes of Section 162(m)] when necessary to achieve its compensation objectives."  (*Id*. at 50.)  At the 2011 Annual Meeting, the ESTIP's performance criteria were reapproved, with more than 424 million votes in favor and only 18 million against.  (Ex. G, Form 8-K filed June 9, 2011, at 2.)

As part of the 2011 Annual Meeting, and pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, the Company also solicited from shareholders their vote

whether to approve, on a non-binding basis, compensation for the Company's Named Executive

Officers, or "NEOs," which include the "covered employees" eligible for performance-based

compensation under Section 162(m).  (Ex. B, 2011 Proxy Statement at 20.)  In this so-called

"say-on-pay" vote, the shareholders approved NEO compensation by an 8-to-1 margin, with a

vote of 396.6 million in favor to 46.0 million against.  (Ex. G, Form 8-K filed June 9, 2011, at 2.)

During the 2012 Annual Meeting, the Company's shareholders again approved NEO

compensation on an advisory basis, this time by an even larger margin of 424.3 million votes in

favor versus 12.8 million votes against.  (Ex. H, Form 8-K filed June 18, 2012, at 3.)

     **E.**     **Defendants' Challenged Statements Relating To The Section 162(m) Provisions**

     Caterpillar's 2011 and 2012 Proxy Statements included disclosures relating to the

Company's intent in structuring the Plans in light of Section 162(m).  Specifically, the 2011

Proxy Statement stated that "[t]he [ESTIP] is intended to comply with section 162(m) of the

Internal Revenue Code of 1986, as amended."  (Ex. B, 2011 Proxy Statement at 17.)  The Proxy

Statement also stated that:

> The goal of the Compensation Committee is to comply with the requirements of Internal Revenue Code Section 162(m), to the extent possible, with respect to long-term and short-term incentive programs to avoid losing the deduction for compensation in excess of $1 million paid to the NEOs.  Caterpillar has generally structured performance-based compensation plans with the objective that amounts paid under those plans will be tax deductible, and the plans must be approved by the Company's stockholders.  However, the Compensation Committee may elect to provide compensation outside those requirements when necessary to achieve its compensation objectives.

(*Id.* at 50.)  Similarly, the 2012 Proxy stated, *inter alia*:

> Under Section 162(m) of the Internal Revenue Code, generally NEO compensation over $1 million for any year is not deductible for United States income tax purposes.  However, performance-based compensation is exempt from the deduction limit if certain

9

> requirements are met.  The goal of the Committee is to structure compensation to take advantage of this exemption under Section 162(m) to the extent practicable.  However, the Committee may elect to provide compensation outside those requirements when necessary to achieve its compensation objectives.  Substantially all 2011 NEO compensation is expected to qualify as performance-based compensation under Section 162(m) or otherwise not exceed $1 million, except RSUs granted under the Chairman's Award program and the CEO's base salary.

(Ex. C, 2012 Proxy Statement at 43.)

Plaintiffs allege that these statements were false and misleading, and that making these statements constitutes a breach of Defendants' fiduciary duty of disclosure to Caterpillar's shareholders.  Plaintiffs also claim that, because the Plans allegedly do not satisfy the requirements for compensation to be treated as performance-based under Section 162(m), the actual payments made under the Plans in 2011 and 2012 constitute waste and unjust enrichment.

For the reasons discussed below, the Complaint should be dismissed.

## ARGUMENT

## I.   THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO PLEAD PARTICULARIZED FACTS SHOWING THAT DEMAND IS EXCUSED.

The Complaint must be dismissed for failure to adequately allege that demand would be futile.  A "cardinal precept" of Delaware law is that "directors, rather than shareholders, manage the business and affairs of the corporation."  *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984).[3] A shareholder derivative action, in which shareholders bring suit in the name of the corporation, "[b]y its very nature . . . impinges on the managerial freedom of directors."  *Id.*; *White v. Panic*, 783 A.2d 543, 550 n.18 (Del. 2001) ("The directors of a corporation and not its shareholders manage the business and affairs of the corporation . . . and accordingly, the directors are responsible for deciding whether to engage in derivative litigation.") (*citing Spiegel v. Buntrock*,

---

[3] Plaintiffs agree that because Caterpillar is a Delaware corporation, Delaware law governs whether demand is excused.  (Compl. ¶ 70.)

RLF1 7852089v.1

571 A.2d 767, 773 (Del. 1990)).  As a result, a shareholder's ability to pursue a derivative action is limited in the first instance by the demand requirement imposed by Delaware law, pursuant to which "shareholders seeking to assert a claim on behalf of the corporation must first . . . mak[e] a demand on the directors to obtain the action desired."  *Spiegel*, 571 A.2d at 773.

In federal derivative actions such as this, Federal Rule of Civil Procedure 23.1 requires that a derivative complaint allege with particularity the efforts, if any, plaintiffs made to obtain the desired action and the reason for the plaintiffs' failure to make a demand.  Fed. R. Civ. P. 23.1; *see also Abrams v. Wainscott*, No. 1-297-RGA, 2012 WL 3614638, at *1 (D. Del. Aug. 21, 2012).  Under both Delaware and Federal law, such allegations must meet "stringent requirements of factual particularity," which cannot be satisfied "by conclusory statements or mere notice pleading."  *See, e.g.*, *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000); *Abrams*, 2012 WL 3614638, at *1.

Plaintiffs did not make a demand on Caterpillar's board.  (Compl. ¶ 71.)  Therefore, the Complaint must be dismissed unless Plaintiffs have alleged particularized facts establishing that making such a demand is excused.  *Aronson*, 473 A.2d at 808; Fed. R. Civ. P. 23.1.  Under Delaware law, demand is excused only when "under the particularized facts alleged, a reasonable doubt is created that:  (1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment."  *Aronson*, 473 A.2d at 814; *see also Rales v. Blasband*, 634 A. 2d 927, 934 (Del. 1993) (in cases not involving a "business decision" under *Aronson*, demand is excused only if "as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand").

A.    **Plaintiffs Have Not Pleaded Particularized Facts Establishing A Reasonable Doubt That A Majority Of The Board Is Not Disinterested And Independent.**

Plaintiffs' central argument for excusing demand is that the Director Defendants are "interested" in the "transactions and events alleged herein." (Compl. ¶ 70.)  Plaintiffs do not, however, challenge any compensation – performance-based or otherwise – that was paid to the Independent Directors, who comprise an overwhelming majority of the Board.  Instead, Plaintiffs merely allege that all Directors, including the Independent Directors, are technically eligible to participate in one of the two Plans, which, in turn, contains the performance-based measures that Plaintiffs assert do not comply with Section 162(m).  (*See id*. ¶ 72) ("All of the members of the Board are eligible to participate in the LTIP and are thus interested under Delaware law.")

This is insufficient.  Under Delaware law, a director is "interested" in a transaction if he or she sits on both sides of the transaction or derives a unique benefit from it.  *Seinfeld v. Slager*, No. 6462-VCG, 2012 WL 2501105, at *2 (Del. Ch. June 29, 2012) (*citing Orman v. Cullman*, 794 A.2d 5, 22-23 (Del. Ch. 2002)).  When determining whether directors are "interested" under the *Aronson* standard, Delaware law focuses on the specific and particular transaction in question.  *See Abrams*, 2012 WL 3614638, at *2 ("The demand futility analysis proceeds transaction-by-transaction."); *Khanna v. McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744, at *14 (Del. Ch. May 9, 2006) (demand futility "analysis is fact-intensive and proceeds director-by-director and transaction-by-transaction").  As a result, the issue for demand futility is not whether the Director Defendants might have some general interest in the subject matter of the Complaint, but rather whether the Director Defendants stood to derive a unique personal benefit from the specific transactions challenged – here, the payment of performance-based compensation intended to be deductible under Section 162(m).  Moreover, Plaintiffs must plead particularized facts *with respect to each director* sufficient to show that a majority of the board suffers a

material, disabling conflict of interest.  *See Aronson*, 473 A.2d at 815 & n.8; *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1134, 1151 (Del. Ch. 1994) (requiring an independent judicial determination regarding the materiality of each director's self-interest in the compensation), *aff'd*, 663 A.2d 1156, 1167 (Del. 1995).  As discussed below, the Complaint does not come close to satisfying these requirements.

### 1. The Independent Directors Have No Interest In The ESTIP.

As an initial matter, although much of the Complaint focuses on the Section 162(m) performance goals contained in the ESTIP, Plaintiffs do *not* allege that the Independent Directors were "interested" in the ESTIP.  Nor could they.  Eligibility to participate in the ESTIP is limited to Caterpillar's executive officers; Caterpillar's non-employee directors are excluded.  (Ex. B, 2011 Proxy Statement at 17-18.)  Because the Independent Directors did not and cannot derive any benefits from the ESTIP, there can be no plausible basis for arguing that they are interested in the ESTIP or the 2011 shareholder vote reapproving it.  Demand is not excused as to this claim.

### 2. The Independent Directors Have No Interest In The Challenged LTIP Transactions.

As to the LTIP, the Complaint alleges that demand would be futile because "[a]ll of the members of the Board are eligible to participate in the LTIP."  Specifically, Plaintiffs allege that as a result of this eligibility, (i) "each director is entitled to receive a personal financial benefit that is not equally shared by the stockholders," and (ii) "seeking stockholder votes [in 2010] for approval of the amendment of the LTIP constituted a self-dealing transaction."  (Compl. ¶ 72).  Neither of these assertions has merit.

    **a.**    **The Independent Directors Do Not Have A Disabling Personal Interest In Section 162(m)-Compliant Performance Awards Under The LTIP.**

Plaintiffs' assertion that the Independent Directors were eligible to participate in the LTIP is not relevant for demand futility purposes in light of the factual allegations of the Complaint, which do not call into question the approval or implementation of the LTIP as a whole. Indeed, as noted above, the LTIP is an extremely broad plan that covers all of the thousands of employees of Caterpillar and its subsidiaries. (*See* p. 5, *supra*). Rather, the Complaint is directed to a very narrow aspect of the LTIP – certain performance-based compensation awarded to "covered employees" that is intended to comply with the requirements of Section 162(m).

As a threshold matter, no Caterpillar employee or director, including the Independent Directors, has any personal interest in the tax treatment of performance-based compensation. The tax deductions afforded under Section 162(m) inure to the *Company's* benefit, not to the recipient of the award. *See* 26 U.S.C. § 162(m) (limiting deductions only for "any publicly held corporation"). As a result, whether or not Caterpillar receives tax deductions for performance-based compensation paid out under the Plans, the tax burden on recipients will remain the same.

Moreover, none of the Independent Directors has or could receive any awards that are subject to Section 162(m). The tax deductibility provisions of Section 162(m) apply only to compensation paid to "covered employees," defined as the CEO and those officers required to be reported to shareholders under the Exchange Act for "being among the 4 highest compensated *officers* for the taxable year (other than the chief executive officer)." 26 U.S.C. § 162(m)(3) (emphasis added). The Independent Directors are not officers, and none are among the five most highly compensated individuals at the Company. In addition, Section 162(m)'s tax deductibility provisions apply only to *performance*-based compensation. The Independent Directors receive a set retainer fee from the Company for their service; they do not receive any performance-based

14

pay at all.  *See* Ex. C, 2012 Proxy Statement at 53-54.  And the tax deductibility provisions in Section 162(m) concern compensation in excess of $1 million dollars.  The compensation provided to the Independent Directors is far below this threshold.  *Id.*  Under these circumstances, all of the Independent Directors, and therefore an overwhelming majority of the Director Defendants, do not have a disabling personal interest in the issue that is presented in the Complaint:  whether the LTIP and the awards made thereunder are Section 162(m)-compliant and whether the proxy disclosures that the Plan was intended to be Section 162(m) complaint were made in good faith.

This conclusion is consistent with the Delaware Chancery Court's recent decision in *Seinfeld v. Slager*, No. 6462-VCG, 2012 WL 2501105 (Del. Ch. June 29, 2012).  The original *Slager* case was filed before this Court.  It asserted various direct claims under the federal proxy statute and derivative claims, including claims similar to the Section 162(m)-related claims asserted here.  *See Seinfeld v. O'Connor*, 774 F. Supp. 2d 660 (D. Del. 2011) (Stark, J.).  After this Court dismissed the direct claims under Section 14(a), *id.* at 669-74, the plaintiff re-filed the derivative claims in the Delaware Chancery Court.  Among other claims, the plaintiff in *Slager* challenged awards made to employees under a stock incentive plan and asserted that the fact that directors were eligible to participate in the same plan constituted a disabling "interest" for demand futility purposes.  The Chancery Court squarely rejected this argument, noting that "[t]he Plaintiff does not argue that the non-executive Defendant Directors lack independence or are beholden to another; instead, the Plaintiff alleges that they are interested in the transaction because they are covered by the same [stock incentive plan] under which the Board made the decision to award time-vesting options to the Covered Employees."  *Slager*, 2012 WL 2501105, at *14.  But because the plaintiff's claim stemmed from the decision to award a

15

particular type of option to non-director employees, the Chancery Court held that "[t]he Defendant Directors, therefore, with respect to employee awards, are not interested in the challenged transactions." *Id*. As a result, the Court held that the board of directors could consider a demand relating to those claims. *Id*. The same is true here with respect to the claims involving the LTIP.

### b. The Independent Directors Do Not Have A Disabling Conflict As A Result Of The 2010 Shareholder Vote.

Plaintiffs also claim that demand is excused because the Director Defendants engaged in "self-dealing" by having sought "shareholder approval" for the 2010 LTIP. This claim is without merit for several reasons.

*First*, the Complaint does not seek any relief with respect to the 2010 vote, instead alleging only that the 2011 and 2012 Proxy Statements were false and misleading. (Compl. ¶¶ 76-82.)[4]

*Second*, any claim of "self-dealing" is premised upon the claim that the Independent Directors had an "interest" in the performance-based incentive compensation being challenged. As discussed above, they do not.

*Third*, the 2010 shareholder vote on the LTIP amendments had no impact on the Independent Directors. That is because if the amendments had not been approved, the Plan would have remained in effect. (*See* Ex. A, 2010 Proxy Statement at 21) ("If stockholders do not approve these amendments, the Plan will remain in full force and effect through June 13, 2016,

---

[4] Although Plaintiffs incorrectly claim that the 2010 shareholder vote did not include re-approval of the performance goals of the LTIP (*see* p. 30, *infra*), they do not challenge the 2010 proxy materials or seek to void that vote.

16

without giving effect to the proposed amendments.")[5]  The Independent Directors thus had no

"interest" in how the shareholders voted.  As a result, Plaintiffs cannot show that the Independent

Directors were actually interested in the 2010 vote to amend the LTIP. [6]  *See, e.g.*, *Abrams*, 2012

WL 3614638, at *5 (dismissing case where plaintiffs failed to allege that payments to directors

under a stock incentive plan depended upon shareholder approval of performance-based metrics).

> **B.      The Plaintiffs Have Not Pleaded Facts Showing A Reasonable Doubt That the Challenged Proxies Were the Result Of A Valid Exercise of Business Judgment.**

        In addition to claiming that the Directors were "interested" in the LTIP, the Complaint

also attempts to allege that pre-suit demand is excused because the alleged misrepresentations

contained in the 2011 and 2012 Proxy Statements are, as a matter of law, not the product of

business judgment.  (*See* Compl. ¶ 73) ("[W]here, as here, a stockholder sues the board of

directors over an act that is . . . one of disclosure, the business judgment rule does not apply.")

        An overwhelming majority of courts, both in this District and elsewhere, however, have

consistently rejected the argument that demand is *per se* excused in cases alleging that directors

breached a duty of disclosure.  *See, e.g.*, *Abrams*, 2012 WL 3614638, at *3; *Freedman v. Adams,*

No. 4199-VCN, 2012 WL 1099893, at *16 n.155 (Del. Ch. Mar. 30, 2012); *Black v. Cincinnati*

*Fin. Corp.*, No. 1:11-cv-210, 2011 WL 1640962, at *4 (S.D. Ohio May 2, 2011); *Bader v.*

*Blankfein*, No. 07-CV-1130, 2008 WL 5274442, at *6 (E.D.N.Y. Dec. 19, 2008), *aff'd*, 356 F.

---

[5] The LTIP's Section 162(m) provisions, which control the tax-deductibility of the performance-based compensation under the LTIP, would likewise have remained in effect even if the shareholders did not approve the 2010 vote.  Because the performance criteria had last been approved in 2006, they did not need to be approved for another year, until 2011.

[6] The two decisions in this District that have found that independent directors were "interested" in cases involving compensation plans challenged under Section 162(m) – *Resnick v. Woertz*, 774 F. Supp. 2d 614 (D. Del. 2011) and *Hoch v. Alexander*, No. 11-217, 2011 WL 2633722 (D. Del. July 1, 2011) – are inapposite.  Both decisions were issued before, and they are inconsistent with, the Chancery Court's decision in *Slager*.

App'x 471 (2d Cir. 2009); *Risberg v. McArdle*, 529 F. Supp. 2d 213, 226 (D. Mass. 2008); *Halpert Enters., Inc. v. Harrison*, No. 06 Civ. 2331, 2007 WL 486561, at *7 (S.D.N.Y. Feb. 14, 2007); *In re Computer Scis. Corp. Deriv. Litig.*, No. CV 06-05288, 2007 WL 1321715, at *4 n.4 (C.D. Cal. Mar. 26, 2007); *In re CNET Networks, Inc. S'holder Deriv. Litig.*, 483 F. Supp. 2d 947, 966 (N.D. Cal. 2007); *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, No. 06 Civ. 688, 2006 WL 2849783, at *4 (S.D.N.Y. Oct. 4, 2006).[7]

These cases recognize that "the law regards the board as best positioned to make the business decision as to whether derivative litigation should be initiated to remedy such a potential [disclosure] violation." *St. Clair Shores Gen. Employees Ret. Sys.*, 2006 WL 2849783, at *6. That is because "[u]nder such circumstances, the directors must do more than simply engage in a legalistic determination of whether the defects are material; they must also decide whether litigation is the best avenue to rectify the problem." *Bader*, 2008 WL 5274442, at *6. Indeed, a contrary rule would eviscerate the demand requirement entirely in cases in which it was claimed that proxy materials contained materially false information, thereby usurping the board's proper role in determining whether to pursue litigation. *Id.* ("[i]f shareholders could elect to sue on behalf of a corporation without consulting the board of directors whenever they deemed a proxy statement to contain materially false information, shareholders could effectively usurp the board's decision as to whether litigation was merited.")

Finally, Plaintiffs allege that demand is excused because the payment of compensation that is allegedly subject to Section 162(m)'s limit on deductibility constitutes waste that is not protected by business judgment. (Compl. ¶¶ 74-75.) Under Delaware law, to excuse demand on

---

[7] While *Vides v. Amelio*, 265 F. Supp. 2d 273 (S.D.N.Y. 2003), held that a misrepresentation claim is not subject to a demand requirement, this decision is in the clear minority. *Bader*, 2008 WL 5274442, at *6 (noting that "[i]n the five and one-half years since *Vides* was decided, no fewer than five other district courts have expressly refused to follow it.").

18

the grounds of waste, Plaintiffs face an extremely high bar.  *See Highland Legacy Ltd. v. Singer*, C.A. No 1566-N, 2006 WL 741939, at \*7 (Del. Ch. Mar. 7, 2006) ("To excuse demand on the grounds of waste, the complaint must allege particularized facts sufficient to create a reasonable doubt that the board authorized action on the corporation's behalf on terms that no person of ordinary, sound business judgment could conclude represents a fair exchange.").  This is an "extreme test, very rarely satisfied by a shareholder plaintiff, because if under the circumstances *any* reasonable person might conclude that the deal made sense, then the judicial inquiry ends."  *Zupnick v. Goizueta*, 698 A.2d 384, 387 (Del. Ch. 1997) (emphasis added; internal quotations omitted).

Plaintiffs here do not and cannot plausibly allege that the performance-based compensation awarded under the Plans was so beyond the pale that no reasonable person could possibly have approved it.  Indeed, the total compensation paid out to the Company's NEOs in both 2011 and 2012, including performance-based compensation to "covered employees" under Section 162(m), was disclosed to and resoundingly approved by shareholders in the say-on-pay votes.  (*See* Ex. G, Form 8-K filed June 9, 2011, at 2 (NEO compensation approved 396.6 million to 46.0 million); Ex. H, Form 8-K filed June 18, 2012, at 3 (NEO compensation approved 424.3 million to 12.8 million).)  Nor can Plaintiffs plausibly allege that the hypothetical non–tax-deductible nature of the performance-based compensation renders such payments "waste," as the ESTIP and LTIP, as approved by shareholders, both allow for the payment of incentives and performance-based compensation regardless of tax deductibility.  Plaintiffs' allegations of waste are a mere makeweight and cannot establish that a demand would be futile.

*          *          *

Plaintiffs have not alleged facts sufficient to show a reasonable doubt that the Independent Directors had an "interest" in any of the specific transactions that are challenged in the Complaint. Likewise, they have failed to show that the challenged transactions were not the product of sound business judgment. As a result, pre-suit demand is not excused and the Complaint must be dismissed.[8]

## II.   THE COMPLAINT MUST BE DISMISSED FOR PLAINTIFFS' FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6).

The Complaint should also be dismissed pursuant to Rule 12(b)(6) because it fails to assert plausible factual allegations sufficient to support Plaintiffs' claims against the Defendants. To state a claim, a complaint must allege facts sufficient to give rise to a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 555-56 (2007) (complaint must allege "enough factual matter" to "raise a right to relief above the speculative level"); *In re eBay, Inc. Deriv. Litig.*, No. 10-470-LPS, 2011 WL 3880924, at *4 (D. Del. Sept. 2, 2011) (Stark, J.). Here, Plaintiffs have failed to plead sufficient facts to support their claims for breach of fiduciary duty, waste, and unjust enrichment. As a result, these claims must be dismissed.

---

[8] In addition to being dismissed for failure to make a demand on the Board, the Complaint should be dismissed because Plaintiffs' claims are not ripe. The IRS has not actually disallowed any deductions taken by Caterpillar, nor even raised any issue concerning the deductibility of payments under the Plans. When, such as here, a claim "involves 'contingent future events that may not occur as anticipated, or indeed may not occur at all,'" such a claim is not ripe. *Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, 689-90 (D. Del. 1998) (*quoting Binker v. Pennsylvania*, 977 F.2d 738, 753 (3d Cir. 1992)); *see also* 13B Charles A. Wright et al., Federal Practice and Procedure § 3532.2 (3d ed.) ("[m]any cases deny ripeness on the straight-forward ground that the anticipated events and injury are simply too remote and uncertain to justify present adjudication"). The Fourth Circuit's decision in *Gasner v. Board of Supervisors of the County of Dinwiddie, Va.*, 103 F.3d 351 (4th Cir. 1996), is illustrative. There, the Court dismissed a claim premised on the mere possibility that interest payments might, at some point in the future, be "deemed" by the IRS to be subject to tax, holding that the claim was "based on a hypothetical claim not ripe for adjudication." *Id.* at 361. *See also Seinfeld v. O'Connor*, 774 F. Supp. 2d 660, 672 (D. Del. 2011) (Stark, J.) (declining to rule on "unalleged hypothetical situation"); *Grimes v. Donald*, 673 A.2d 1207, 1214 (Del. 1996) (dismissing claim challenging compensation payments under "possible future circumstances" as "based on speculation" and not ripe for adjudication), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

20

A.      **The Complaint Fails To State A Claim For Breach Of Fiduciary Duty.**

Plaintiffs allege that disclosures made by the Director Defendants in Caterpillar's 2011 and 2012 Proxy Statements constitute material misrepresentations about the tax deductibility of performance-based compensation paid under the ESTIP and LTIP.  Plaintiffs argue that the Section 162(m) performance criteria contained in the Plans fail to satisfy Treasury regulations for shareholder reapproval, and that the Director Defendants therefore "misrepresented the tax-deductibility of compensation paid . . . pursuant to § 162(m) and the Treasury Regulations promulgated thereunder."  (Compl. ¶ 60.)

Plaintiffs' theory cannot withstand scrutiny.  To start, the plain text of the challenged Proxy Statements simply does not say what Plaintiffs claim it says.  The Director Defendants never guaranteed that the Plans *did* or *would* comply with Section 162(m), only that they *intended* or *expected* the Plans to comply.  That is indisputably true, and Plaintiffs allege no facts suggesting otherwise.  In addition, the ESTIP and LTIP *do* in fact comply with Section 162(m), thereby undermining the fundamental premise of Plaintiffs' Complaint.

1.      **The Challenged Proxy Statement Disclosures Reflect Only Defendants' Opinions Regarding The Plans, Which Are Not Alleged To Be False.**

According to Plaintiffs, the Company's 2011 and 2012 proxy disclosures were "materially false and misleading" purportedly because "none of the 2011 compensation qualifies under Section 162(m) for tax-deductibility" and because "the ESTIP are [*sic*] not structured to qualify for tax-deductions under § 162(m)."  (Compl. ¶¶ 61-62.)

This claim is a strawman.  In fact, the Proxy Statements nowhere represent that either the ESTIP or the LTIP have been found to be in compliance with Section 162(m), nor do they guarantee that the performance-based compensation awarded under these Plans will, in fact, be tax deductible to the Company.  The actual statements in the Proxies are as follows:

21

- "Caterpillar has generally structured performance-based compensation plans *with the objective* that amounts paid under those plans will be tax deductible." (Compl. ¶ 62, quoting Ex. B, 2011 Proxy Statement at 50) (emphasis added).

- "The [ESTIP] *is intended* to comply with section 162(m)." (Compl. ¶ 62, quoting Ex. B, 2011 Proxy Statement at 17) (emphasis added).

- "Substantially all 2011 NEO compensation *is expected* to qualify as performance-based compensation under § 162(m) . . . ." (Compl. ¶ 61, quoting Ex. C, 2012 Proxy Statement at 43) (emphasis added).

Thus, the disclosures express only Defendants' opinions or beliefs – *i.e.*, their "objective," "inten[t]," or "expect[ation]" – that the Plans comply with Section 162(m).  Such statements of opinion or belief are not adequately alleged to be either subjectively or objectively false, and are therefore not actionable.

　　"To state a claim for breach of the fiduciary duty of disclosure on the basis of a false statement or representation, a plaintiff must identify (1) a material statement or representation in a communication contemplating stockholder action (2) that is false."  *Pfeffer v. Redstone*, 965 A.2d 676, 685 (Del. 2009) (*quoting O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 920 (Del. Ch. 1999).)  And when the challenged disclosures are statements of opinion and belief rather than objectively verifiable facts, such statements are "false" only if they are both "subjectively" false, in that Defendants did not genuinely hold these opinions or belief, and "objectively" false, in that the opinions or beliefs had no reasonable basis.  *See In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 515 (D. Del. 2001) (misrepresentation claim for allegedly false disclosure of opinion in proxy statements requires that "plaintiffs must show that the . . . statements of opinion were both objectively and subjectively false"); *see generally Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1095 (1991) ("a statement of belief may be open to objection . . . solely as a misstatement of the psychological fact of the speaker's belief in what he says").  Failure to plead either subjective or objective falsity is fatal to a claim for a purportedly

22

false disclosure of opinion. *Reliance Sec.*, 135 F. Supp. 2d at 514-15. Here, Plaintiffs allege

neither.

As to subjective falsity, nowhere in the Complaint do Plaintiffs allege any facts to

support a claim that any Defendant did not genuinely believe the statements in the 2011 and

2012 Proxy Statements about the intent or expectation that the LTIP and ESTIP would comply

with Section 162(m). This Court recently dismissed substantially identical allegations arising

out of proxy statements issued by Republic Services and its board of directors when it held that

the plaintiff had failed to sufficiently plead falsity. *See Seinfeld v. O'Connor*, 774 F. Supp. 2d

660 (D. Del. 2011) (Stark, J.). In *O'Connor*, the plaintiff alleged that disclosures made in a

proxy statement that compensation "may qualify as performance-based compensation under

Section 162(m)" or was "intended to comply" with Section 162(m) were false or misleading. *Id.*

at 666. As Plaintiffs do here, the *O'Connor* plaintiff argued that Republic Services'

compensation plan did not actually comply with Section 162(m). However, as this Court

recognized, such arguments, even if true, could not transmute the statements of opinion and

intent in Republic Services' proxy into actionable statements of fact. This Court held:

> Each of these alleged deficiencies, in Seinfeld's view, renders the
> [compensation] non-deductible. Therefore, he concludes, the
> proxy statement's disclosures asserting (or even suggesting) that
> the EIP will be deductible are, in his view, false and misleading.
> An immediate problem with this theory is, again, that the proxy
> statement does not state that the [compensation] *will be* deductible.
> Moreover, as the Court has already explained, Republic's
> expressed belief that the EIP *would be* deductible was a reasonable
> belief.

*Id.* at 669. Focusing on the actual language used in the disclosures – in particular the words

"*may* qualify" and "*intended* to qualify" – the Court found that plaintiff's claim was "baseless

[as] there was no promise that the [plan] was guaranteed to be tax-deductible, so even if the plan

was ultimately *not deductible*, the proxy statement does not contain false or misleading

23

statements." *Id.* at 666-67 ("it is plain that the proxy statement does not say what Seinfeld alleges.  It does not assert that the [compensation] *will* be tax-deductible, only that it is *intended* to be deductible" under IRC § 162(m)").

Just as in *O'Connor*, the challenged proxy statements here do not state that compensation paid out under Caterpillar's Section 162(m) plans *will be* deductible, but only Defendants' intent and expectation that it would be deductible, and Plaintiffs have alleged no facts to suggest that this was not Defendants' actual intent and expectation.  *See also Freedman v. Adams*, No. 4199-VCN, 2012 WL 1345638, at *16 (Del. Ch. Mar. 30, 2012) (dismissing claim where the plaintiff had "presented no factual allegations from which the Court could infer that the Board did not believe" its statements regarding the possible impact of Section 162(m)); *cf. also In re MONY Grp., Inc. S'holder Litig.*, 853 A.2d 661, 685 (Del. Ch. 2004) ("It is unreasonable for the plaintiffs to now argue that the Board's disclosure was misleading because a contemplated event did not actually happen.")

The statements also had an objectively reasonable basis.  To plead objective falsity, Plaintiffs may not simply allege that the opinions reflected in the 2011 and 2012 Proxy Statements are incorrect.  Instead, they must allege that the opinions were so far beyond the pale that Defendants simply had no reasonable basis for their beliefs.  *See, e.g.*, *Eisenberg v. Gagnon*, 766 F.2d 770, 776 (3d Cir. 1985) ("[a]n opinion or projection, like any other representation, will be untrue if it has no valid basis").

Here, as discussed in detail below, there was ample reason for Defendants to believe that performance-based compensation awards under the ESTIP and LTIP would be tax deductible.  Thus, for instance, courts have regularly approved of "menu plan" approaches to performance measures similar to the approach taken in the ESTIP and LTIP, and have also approved the use

24

of non-GAAP measures (*see* p. 27, *infra*).  Likewise, the use of indefinite "Performance Periods" has been upheld, including by this Court in *O'Connor*.  774 F. Supp. 2d at 671-72.

In addition, the use of "individualized performance objective" metrics is common. Plaintiffs challenge the inclusion of the following performance metric:  "any individual performance objective which is measured solely in terms of quantifiable targets related to the Company or the businesses of the Company," (Compl. ¶¶ 46, 57), which they characterize as "egregious" (*id*. ¶ 46) and assert "clearly does not satisfy" the Treasury regulations regarding objectivity.  (*Id*.)  But a review of publicly available SEC filings readily reveals many other public companies that include similar "individual performance objectives" criteria in compensation plans that these companies describe as compliant with Section 162(m).  These include prominent Fortune 500 companies such as American Electric Power Co. Inc., Apple Computer, PPG Industries, and Waste Management Inc.  For example, Apple Computer's plan includes as a performance criterion "any individual Company business-related objective that is objectively determinable within the meaning of Code Section 162(m) and the Treasury Regulations promulgated thereunder;" American Electric Power Co. Inc.'s plan includes "other individual performance objective that is measured solely in terms of quantitative targets related to the Company, any Subsidiary or the Company's or Subsidiary's business;" and PPG Industries' plan includes "quantifiable, objective measures of individual performance relevant to the particular individual's job responsibilities."[9]

Simply put, it cannot have been objectively unreasonable for Defendants to have publicly expressed their belief that the performance metrics in the LTIP and ESTIP were expected to be

---

[9] A list of these companies, with excerpts from their public SEC filings reflecting the relevant performance metrics in their Section 162(m) plans, is attached hereto as Exhibit I.  As discussed above, such filings are suitable for judicial notice and may be considered on a motion to dismiss. *See* n.1, *supra*.

Section 162(m) compliant in light of these examples, none of which has been publicly

challenged by the IRS.  Moreover, even had Plaintiffs or some other person raised a question as

to the propriety of the inclusion of such a performance metric on the tax deductibility of future

compensation paid under the Plans, the Third Circuit has made clear that a corporation is not

required to "disclose a legal theory with which [it] [does] not agree."  *Ash v. LFE Corp.*, 525

F.2d 215, 220 (3d Cir. 1975).  In addition, under Delaware law, there is no duty to speculate as to

the outcome of a possible legal challenge.  *See Loudon v. Archer-Daniels-Midland, Co.*, C.A.

No. 14638, 1996 WL 74730, at *4-5 (Del. Ch. Feb. 20, 1996) (dismissing claim that company

should have disclosed antitrust matters where director had not been accused or convicted of such

violations), *aff'd*, 700 A.2d 135 (Del. 1997); *see also MONY Group, Inc. S'holder Litig.*, 853

A.2d at 682 ("[A]s a general rule, proxy materials are not required to state 'opinions or

possibilities, legal theories or plaintiff's characterization of the facts.'"); *Khanna v. McMinn*, No.

20545-NC, 2006 WL 1388744, at *29, 34 (Del. Ch. May 9, 2006) ("a board of directors is not

required to 'confess to wrongdoing prior to any adjudication of guilt,' nor must it 'draw legal

conclusions implicating itself in a breach of fiduciary duty from surrounding facts and

circumstances prior to a formal adjudication of the matter'").

> **2.    The ESTIP And LTIP Fully Comply With The Requirements For Tax Deductibility Under Section 162(m).**

Plaintiffs' claims should also be dismissed because they have failed adequately to allege

that the ESTIP and LTIP do not meet the requirements of Section 162(m) and, therefore, that

performance-based compensation paid out in 2011 and 2012 under these Plans is subject to the

$1 million deduction limit under Section 162(m).  None of Plaintiffs' challenges to the Plans has

merit.

To begin, Plaintiffs criticize the Plans for having a "laundry list of performance metrics." (Compl. ¶¶ 46, 57.)  As explained above, the Section 162(m) provisions of the ESTIP and LTIP contain multiple performance criteria from which the Committee can select metrics for performance-based awards.  It is firmly settled that the inclusion of multiple performance criteria is perfectly acceptable under Section 162(m).  Similar "menu plans" have repeatedly been upheld by this Court and others.  *See O'Connor*, 774 F. Supp. 2d at 67; *Black v. Cincinnati Fin.*, No. 1:11-cv-210, 2011 WL 1640962, at *7 (S.D. Ohio May 2, 2011).  In addition, examples contained in the Treasury regulations implementing Section 162(m) clearly contemplate a "menu plan" approach to performance criteria.  *See* 26 C.F.R. § 1.162–27(e)(4)(ix) (providing an example of a Section 162(m) plan with multiple performance criteria: "increases in earnings per share, reduction in costs for specified divisions, and increases in sales by specified divisions").

Plaintiffs also allege that the LTIP is flawed by the inclusion of criteria that are based on non-GAAP measures.  (Compl. ¶ 47.)  However, the Treasury regulations require only that performance criteria for a Section 162(m) plan be objective; they do not mandate that the criteria be based on GAAP accounting.  In fact, the Treasury regulations themselves offer examples of performance criteria not based on GAAP accounting.  *See, e.g.*, 26 C.F.R. § 1.162–27(e)(4)(ix) (whether a new product "is completed and ready for sale" by a certain date is an appropriate performance criterion).

In addition, Plaintiffs allege that the performance metric of "any individual performance objective which is measured solely in terms of quantifiable targets related to the Company or the businesses of the Company" fails to meet requirements in the Treasury regulations for "specificity and objectivity" in performance criteria.  (Compl. ¶¶ 46, 57.)  This is not so. Because this performance objective must be based on "quantifiable targets" only, this

27

performance criteria, in place both at Caterpillar and frequently used elsewhere (*see* p. 25, *supra*), satisfies the standards for Section 162(m) compliance set forth in the Treasury regulations.

The applicable Treasury regulations require only that performance criteria used in a Section 162(m) plan be "preestablished [and] objective." 26 C.F.R. § 1.162–27(e)(2). The regulations explain that a performance criterion is considered objective "if a third party having knowledge of the relevant facts could determine whether the goal is met." 26 C.F.R. § 1.162–27(e)(2). Importantly, the test as set forth in the regulations is not whether *any shareholder* could determine whether the goal is met, but instead whether a qualified third-party, given all the relevant facts, could do so. Given that the "individual performance objectives" to be used in the ESTIP and LTIP are limited to "quantifiable targets," it is clear that a third party, having been provided with "relevant facts," including the specific individual performance objective and the quantifiable target, could determine whether such targets had been met.

Indeed, the Treasury regulations contemplate the use of individual performance criteria in a Section 162(m) plan – the regulations include an example of such individualized goals. Specifically, 26 C.F.R. § 1.162–27(e)(2)(vii) uses as an example the situation of a general counsel's ability to obtain a favorable settlement for particular litigation. While the criterion in the example is held insufficient for other reasons (it was not substantially uncertain at the time the goal was set), the regulations do not suggest that an individualized performance goal based on a general counsel's specific job functions would not meet the requirements of Section 162(m).[10]

---

[10] The fact that the ESTIP and LTIP do not disclose a particular target level for individual performance objectives is also permissible. The Treasury regulations states that "if a bonus plan provides that a bonus will be paid if earnings per share increase by 10 percent, *the 10-percent*

Plaintiffs also allege that the LTIP fails to comply with applicable Treasury regulations because it includes an indefinite "Performance Period" for measuring and achieving performance-based objectives. The Treasury regulations require that performance objectives in a Section 162(m) plan must be "substantially uncertain" at the time they are established by the Committee, 26 C.F.R. § 1.162-27(e)(2)(i), and Plaintiffs argue that the Committee could, hypothetically, set a Performance Period to "be as short as a day, or any other length that could possibly render the outcome to be not substantially uncertain." (Compl. ¶ 50.) Critically, however, Plaintiffs do not allege that the Committee has in fact ever set the Performance Period to such a short period so as to render the outcome certain. This Court has previously rejected this exact same argument when brought against a similar Section 162(m) plan in the same posture, noting that "[t]here is no need to address the permissibility of an unalleged hypothetical situation." *O'Connor,* 774 F. Supp. 2d at 672.

Plaintiffs' allegation that the maximum limit on awards under the LTIP violates Section 162(m) is similarly without merit. Plaintiffs allege that the maximum award amount is so high as to be effectively a false limit, and that this results in a failure to inform shareholders of the actual intended maximum for performance-based compensation. (Compl. ¶ 51.) Plaintiffs' theory that the LTIP's limit, which was disclosed to and approved by Caterpillar's shareholders, has somehow defeated the purpose of the Treasury regulations is unsupported by caselaw or the regulations. The Treasury regulations contain no restrictions on how close the limit for a Section 162(m) plan needs to be tailored to actual or even expected awards, nor does it contain any limit

---

*figure is a target that need not be disclosed to shareholders.* However, in that case, disclosure must be made that the bonus plan is based on an earnings-per-share business criterion." 26 C.F.R. § 1.162–27(e)(4)(iii) (emphasis added). This is entirely consistent with the ESTIP and LTIP's "individual performance objective" criteria: it discloses that performance-based compensation may be based on individual performance factors, but does not include particular targets for these factors.

whatsoever on the amount of compensation that can be awarded under a Section 162(m) plan. Instead, the regulations require only a disclosure "specific enough so that shareholders can determine the maximum amount of compensation that could be paid to any employee during a specific period." 26 C.F.R. § 1.162-27(e)(4)(iv). The LTIP complies with this regulation in every aspect.

Finally, Plaintiffs allege that the defendants failed to timely reapprove the LTIP's performance criteria after the 2006 Annual Meeting, claiming that the Defendants "sought re-approval only of the *amendments* to the LTIP at the 2010 Annual Meeting, not reapproval for the full Plan and the performance measures set forth therein." (Compl. ¶ 53.)[11] This is based on an obvious mischaracterization of the shareholder proposal contained in the 2010 Proxy, which states "[a]pproval of the amendments to the Plan will also constitute reapproval, for purposes of Section 162(m) . . . of the performance goals included in the Plan [ ] that are to be used in connection with awards under the Plan that are intended to qualify as 'performance-based' compensation for purposes of Section 162(m)." Ex. A, 2010 Proxy Statement at 21. Plaintiffs' disclosure allegations fail to state a claim.[12]

### B.    Plaintiffs Cannot Meet The High Standard For Pleading Waste.

Plaintiffs allege that the award of allegedly non–tax-deductible compensation to the "covered employees" constitutes waste. (Compl. ¶ 84.) To state a claim for corporate waste,

---

[11] Plaintiffs also assert in a conclusory fashion and without supporting factual allegations that "stockholders never properly approved [the LTIP] at the 2006 Annual Meeting." (Compl. ¶ 42.) Plaintiffs provide no theories as to why the 2006 vote was not "proper," much less any facts to support their claim. Such conclusory allegations are not given any weight. *See Twombly*, 550 U.S. at 545, 555 (a well-pleaded complaint must contain more than mere labels and conclusions).

[12] Plaintiffs' suggestion that the Proxy Statement failed to comply with SEC Regulation S-K, 17 C.F.R. § 229.402, is without merit. (*See* Compl. ¶ 64.) This Court rejected this claim in *O'Connor*, noting that this regulation "is directed at compensation that has already been paid, not compensation that may in the future be paid," which is the gravamen of Plaintiffs' claims here. 774 F. Supp. 2d at 670 n.8.

Plaintiffs must allege facts that, if true, establish that Defendants "authorize[d] an exchange that is so one sided that *no* business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Criden v. Steinberg,* No. 17082, 2000 WL 354390, at *3 (Del. Ch. Mar. 23, 2000) (emphasis added; internal quotations omitted); *see also Eisner*, 746 A.2d at 263; *Lewis v. Vogelstein*, 699 A.2d 327, 336 (Del.Ch. 1997) ("[W]aste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."). Because corporate waste is "confined to unconscionable cases where directors irrationally squander or give away corporate assets," *Eisner,* 746 A.2d at 263, the standard for pleading corporate waste is "extreme" and "very rarely satisfied." *Steiner v. Meyerson,* No. 13139, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995).

As an initial matter, Plaintiffs are incorrect in their arguments that the ESTIP and LTIP do not comply with Section 162(m)'s requirements for tax deductibility. Moreover, as explained above (*see* pp. 18-19, *supra*), Plaintiffs have failed to allege any facts to support a claim of waste, regardless of the tax deductibility of the performance-based compensation. In fact, far from being outside the realm of reasonableness, public filings show that Caterpillar's shareholders approved both overall NEO compensation, including performance-based compensation under Section 162(m), and approved the Company's right to award compensation under the ESTIP and LTIP regardless of its tax treatment.[13]

---

[13] Plaintiffs also allege that the maximum payment amounts allowable under the Plans are "so excessive" as to constitute waste. (Compl. ¶ 85). This claim is fatally flawed. First, the ESTIP and the LTIP, including their award limits, were approved by shareholders, and as a result cannot be shown to be outside the realm of ordinary reason. In addition, Plaintiffs have not alleged that any actual "excessive" payment has actually been made. As this Court has reasoned elsewhere, "[t]here is no need to address the permissibility of an unalleged hypothetical situation." *O'Connor*, 774 F. Supp. 2d at 672.

C.      **Plaintiffs Cannot Plead Unjust Enrichment.**

Plaintiffs' final claim is that the Individual Defendants have or will be unjustly enriched by payments received under the ESTIP or LTIP.  (Compl. ¶ 90.)  This claim is nonsensical.  As noted above, the tax deduction under Section 162(m) inures to the benefit of the corporation, not the recipient of the compensation.  Thus, no recipient of performance-based compensation under the Plans was "enriched" by virtue of the fact that the *Company* took a tax deduction on it.  Moreover, Plaintiffs' claim for unjust enrichment is founded on the argument that Defendants failed to make sufficient disclosures relating to the Plans.  (Compl. ¶ 90) ("The Individual Defendants have been or will be unjustly enriched as a result of their acceptance of bonuses under compensation plans that were insufficiently disclosed to the stockholders.")  As discussed above, such a claim is without merit.  In addition, given that the ESTIP and LTIP – as approved by a majority of Caterpillar's shareholders – both allow for the payment of incentives and performance-based compensation regardless of tax deductibility, Plaintiffs have no basis to argue that such payments are "unjust."

## CONCLUSION

For all the reasons discussed above, Plaintiff's Complaint fails to establish that demand should be excused and fails to state a claim.  Accordingly, the Complaint should be dismissed.

OF COUNSEL:

Walter C. Carlson (*pro hac vice*)
James W. Ducayet (*pro hac vice*)
Patrick J. Wackerly (*pro hac vice*)
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Dated:  January 7, 2013

/s/ *Jason J. Rawnsley*
Gregory P. Williams (#2168)
Jason J. Rawnsley (#5379)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801
(302) 651-7700
williams@rlf.com
rawnsley@rlf.com

*Attorneys for Defendants David L. Calhoun,
Daniel M. Dickinson, Eugene V. Fife, Juan
Gallardo, David R. Goode, Jesse J. Greene,
Jr., Jon M. Huntsman, Jr., Stuart L. Levenick,
Peter A. Magowan, Dennis A. Muilenburg,
Douglas R. Oberhelman, William A. Osborn,
James W. Owens, Charles D. Powell, Edward
B. Rust, Jr., Susan C. Schwab, Joshua I. Smith,
Gerard Vittecoq, Miles D. White, Steven H.
Wunning, and Caterpillar Inc.*

33

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2013, I caused to be filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification to counsel of record, and have caused copies of the foregoing to be served on the counsel listed below in the manner indicated:

**VIA ELECTRONIC MAIL**

Brian E. Farnan
Farnan LLP
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com

*Attorneys for Plaintiffs City of Lansing Police
& Fire Retirement System and Asbestos
Workers Philadelphia Pension Fund*

**VIA ELECTRONIC MAIL**

Alexander Arnold Gershon
Barrack, Rodos & Bacine
425 Park Avenue - 31st Floor
New York, New York 10022
(212) 688-0782
agershon@barrack.com

*Attorneys for Plaintiff Asbestos Workers
Philadelphia Pension Fund*

**VIA ELECTRONIC MAIL**

Benjamin Y. Kaufman
Gloria Kui Melwani
Milberg LLP
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300
bkaufman@milberg.com
gmelwani@milberg.com

*Attorneys for Plaintiff City of Lansing
Police & Fire Retirement System*

*/s/ Jason J. Rawnsley*
Jason J. Rawnsley (#5379)
rawnsley@rlf.com